In re AMERICAN INTERNATIONAL GROUP, INC. SECURITIES LITIGATION.

This Document Relates To: All Actions.

No. 04 Civ. 8141(DAB).

United States District Court, S.D. New York.

April 11, 2013.

---

*MEMORANDUM & ORDER*

DEBORAH A. BATTS, District Judge.

On April 10, 2013, the Court held a Fairness Hearing in this matter to consider Motion for Approval of the Settlement with Defendants Maurice R. Greenberg, Howard I. Smith, Christian M. Milton, Michael J. Castelli, C.V. Starr & Co., Inc., and Starr International Company, Inc. (collectively "Starr Defendants"), and the Motion for Attorney's Fees and Reimbursement of Expenses. In accordance with the Court's findings and rulings as set forth in this Order, the April 10, 2013 Order, and the Transcript of the April 10, 2013 Fairness Hearing, the Court CERTIFIES the Settlement Class for settlement purposed, APPOINTS Lead Plaintiff as Settlement Class Representative, and APPOINTS Lead Counsel as Settlement Class Counsel. Furthermore, the Court finds the Proposed Settlement to be fair, reasonable, and adequate, and the Plan of Allocation to be fair and equitable. The Proposed Settlement and Plan of Allocation are HEREBY APPROVED. Finally, the Court finds the attorneys' fees and attorneys' and Lead Plaintiffs' expenses to be reasonable. The Motions for Approval of Attorneys' Fees and for Reimbursement of Attorneys' and Lead Plaintiffs' Expenses are HEREBY APPROVED.

## I. INTRODUCTION

### A. *Factual Background and Litigation History*

This action, which was filed in 2004, arises from material misstatements and omissions allegedly made by Defendants in connection with disclosures of (1) the Starr Defendants' alleged involvement in a scheme that included steering contingent commissions to, and rigging certain insurance bids with, Marsh & McLennan Companies, Inc.; and (2) an alleged accounting fraud at AIG that resulted in the Company restating nearly four years of earnings and adjusting earnings for a fifth year. Lead Plaintiff also alleged a "market manipulation" fraud, in which the Starr Defendants and AIG manipulated the market through the purchase of millions of shares of AIG stock.

This is the third Settlement in this case. On two prior occasions, Lead Plaintiffs settled lawsuits under the same caption, and with the same operative set of facts, against Defendants PwC and AIG. The Court held Fairness Hearings for the Approval of the Proposed Settlement with Defendant PwC on November 30, 2010, and with Defendant AIG on January 31, 2012. The Court heard the Objections to the Settlement by Steven A. Miller at the January 31, 2012 Fairness Hearing. The Court overruled all of the Miller Objections with the exception of one; it sustained the Objection to the provision of the Agreement that would have returned residual Settlement funds to the Defendant, and directed the Parties to amend the Agreement to provide for a *cy pres* distribution of any residual funds to a 501(c)(3) not-for-profit. The Court signed Final Approval Orders for the Settlements with the Defen-

dants on December 2, 2010 and February 2, 2012, respectively.

During the more than seven years this action has been pending, this matter has been litigated vigorously. The litigation has involved: (1) fully-briefed motion practice, on two separate occasions, to determine the Lead Plaintiff; (2) Motions to Dismiss filed by 23 Defendants; (3) fact and expert discovery related to class certification, followed by a contested Motion for Class Certification involving four days of legal argument and hearings; (4) the review and analysis of more than 53.3 million pages of documents, including more than 835,000 pages produced by Defendant AIG; and (5) 50 depositions of fact and expert witnesses.

The Settlement, which was negotiated at arm's length over many years with the help of several mediators, including the Honorable Layn R. Phillips (Ret.), creates a Settlement Fund of $115,000,000.00. The Distribution Amount, which is the Settlement Fund plus interest and less any expenses related to taxes, notice, and Settlement administration, and any attorneys' fees and expenses award or Lead Plaintiff's award approved by the Court, is to be distributed pursuant to the Plan of Allocation, which is set forth in pages sixteen through twenty-seven of the Notice distributed to Class Members.

The Settlement Class consists of: all persons and entities who purchased or otherwise acquired AIG Securities during the period from October 28, 1999 through April 1, 2005, inclusive, as well as all persons and entities who held the common stock of HSB Group, Inc. ("HSB") at the time HSB was acquired by AIG in a stock-for-stock transaction, and all persons and entities who held the common stock of American General Corporation ("AGC") at the time AGC was acquired by AIG in a stock-for-stock transaction, and who were damaged thereby, excluding persons who made timely and valid requests for exclusion from the Class. Named Defendants, members of the immediate families of Named Defendants, parents, subsidiaries, affiliates,

officers, or directors of AIG, any entity in which any of the foregoing has a controlling interest, or the legal representative, heirs, successors, and assigns of any of the foregoing, are precluded from making claims under the Settlement.

In an Order dated February 3, 2012, this Court preliminarily approved the Proposed Settlement between Lead Plaintiffs and Starr Defendants. The Preliminary Approval Order conditionally certified a Class for the purposes of Settlement only. The Court also approved the Notice for dissemination to Class Members. On April 27, 2012, Lead Plaintiffs moved to have the Court approve the Proposed Settlement with Starr Defendants. The Court set a Fairness Hearing for June 28, 2012, to consider the fairness, reasonableness and adequacy of the Settlement and Plan of Allocation, but the Hearing was continued.

On August 17, 2012, the Office of the Attorney General for the State of New York filed an objection to the Settlement, which this Court, on January 7, 2013, dismissed for lack of standing, but considered as an *amicus* submission. In that same Order, the Court instructed Lead Plaintiffs to issue a Supplemental Notice to the Class to address a previous error regarding the statistical significance between the AIG securities prices and three "market corrective" dates. Lead Plaintiffs issued the Supplemental Notice, which also extended deadlines for potential members of the Class to Opt–Out of the Settlement and to Object to the Settlement (to March 6, 2013), as well as to submit Proofs of Claim (to March 27, 2013).

B. *Fairness Hearing and Consideration of Objections*

A Fairness Hearing in this matter was held at 2:30 p.m. in Courtroom 24B on April 10, 2013. Prior to the hearing, Forrest S. Turkish submitted an Objection on behalf of Objector Marshall Orloff, Trustee for Orloff Family Trust DTD 12/13/01.[1] (*See* ECF No.

---

1. On April 4, 2013, the Court issued an Order overruling Orloff Trust's Objection for lack of standing to object because it failed to the provide Proofs of Claim necessary to demonstrate it as a

member of the Class. (ECF No. 679.) It has since been brought to the Court's attention that Objector did, in fact, make a timely submission of its Proofs of Claim and, therefore, is a member

671.) Mr. Orloff claimed that the Settlement (1) is neither fair to the Class nor reasonable, (2) fails to make proper use of the *cy pres* doctrine, (3) permits Class Counsel to administer the claims process, (4) compensates Class Counsel with an unreasonably high fee, and (5) provides inadequate notice to the Class.

This Court OVERRULED Mr. Orloff's objections that the Settlement was unfair and unreasonable and that the 13.25% award of attorneys' fees was excessive. As set forth below, this Court found the Settlement to have been fair, reasonable, and adequate. The Settlement was negotiated at arms-length and the litigation was complex, costly, and lengthy in duration. Lead Plaintiffs' Counsel represented the Class dutifully and professionally, and without its representation, the Class might have obtained a result far less beneficial than the one provided by the Settlement.

This Court further concluded that a 13.25% attorneys' fee award was in line with awards in similar cases, that it reflected the complexity of this case and Lead Counsel's efforts, and that it was consistent with the agreement executed by Lead Counsel and the Ohio Attorney General's Office.

Mr. Orloff also objected to the Plan of Allocation, which contemplates a *cy pres* distribution to a 501(c)(3) not-for-profit organization with any residual Settlement funds. Mr. Orloff argued that the Plan of Allocation does not meet the requirements for fairness because it fails to identify specific charities to receive any remaining funds. This Court OVERRULED the objection, and noted that there was no legal authority to support the argument; no Court in the Circuit has ever made identifying the organization to receive the residual funds a condition precedent to a Settlement approval. "Of course," as the Court in *Masters v. Wilhelmina Model Agency, Inc.* noted, "it [is] not certain at the time [of] the Agreement ... whether there [will] be [e]xcess [f]unds" after all distributions are made pursuant to the Plan of Allocation. *Masters v. Wilhelmina Model Agency, Inc.* 473 F.3d 423, 435 (2d Cir.2007).

of the Class. As such, the April 4, 2013 Order is

The Court, similarly, OVERRULED Mr. Orloff's objections regarding the adequacy of the Notice to the Class because they were meritless. Mr. Orloff contended that the Notice was legally-deficient because it failed to indicate that there would be a *cy pres* distribution for the residual funds, and failed to notify the Class which organizations would receive the *cy pres* distribution. Again, Mr. Orloff failed to cite authority to sustain his position. The Notice, which provides the Class with information on the material parts of the Agreement, is only required to

> clearly and concisely state in plain, easily understood language (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses;(iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed.R.Civ.P. 23(c)(2). Objector cites no authority-not Rule 23 or otherwise-to indicate that a *cy pres* distribution of de minimis funds is material to the Notice.

Finally, this Court OVERRULED Mr. Orloff's objection in which he argued that the Settlement Agreement allowed Lead Counsel to "make decisions without any guidelines of judicial oversight." (Objection at 6.) The contested provision states that "Lead Plaintiff's counsel shall have the right, but not the obligation, to advise the Administrator to waive what Lead Plaintiff's counsel deem to be de minimis or formal or technical defects in any Proofs of Claim submitted." (Agreement at ¶ E5.) While it does provide Lead Counsel with some discretion, the provision lends not even a scintilla of credibility to Objector's bald assertion that it creates a "high potential for unfair or preferential treatment of certain class members." (*Id.*) This Court found that the instant Agreement, like the Agreement in the previous Settlements in this case, separates sufficiently Lead Counsel's representation of the Class

VACATED and SUPERCEDED by this Order.

from the administration of the Settlement Fund.

On April 10, 2013, the Court issued an Order, which further set out its reasoning for OVERRULING Mr. Orloff's Objections.

## II. DISCUSSION

### A. *Class Certification*

In order to certify finally the Class as defined by the Court's February 3, 2012 Order, the Court will consider the criteria of Federal Rule of Civil Procedure 23(a) and (b). The four prerequisites of Rule 23(a) are that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

■ The Court finds that the Class is so numerous that joinder of all members is impracticable. Claims Administrator Rust Consulting, Inc. ("Rust") mailed more than 2 million Notice Packets, including 1,978,859 to individual names and addresses and 1,925 to nominee names and addresses. (Miller Aff., Apr. 24, 2012 (Ex. 3 to Dubbs Decl., Apr. 27, 2012), ¶ 10; Miller Aff., June 12, 2012 (Ex. 1 to Dubbs Reply Decl., Jun. 13, 2012), ¶ 5.)

The Court finds that there are questions of law or fact common to the Class. The Court also finds that under Rule 23(b)(3), these questions predominate over any questions affecting only individual Class Members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The central questions of whether Defendants made false and misleading statements in documents including periodic reports filed with the Securities and Exchange Commission, and whether those alleged misstatements caused AIG Securities to trade at artificially inflated prices during the Class Period, are common to the Class and predominate over questions affecting only individual members. (*See* Dubbs Decl. Apr. 27, 2012, ¶¶ 34–36.)

The Court finds that the claims and defenses of the representative parties are typical of the claims and defenses of the Class. Lead Plaintiff, like all Class Members, purchased AIG Securities at allegedly artificially inflated prices during the Class Period and claims to have suffered damages because of the Starr Defendants' alleged material misconduct. Accordingly, the legal theories and evidence Lead Plaintiff would advance to prove its claims would simultaneously advance the claims of other Class Members. (Mem.L.Supp.Mot.Prelim.Approval, p. 11.)

The Court finds that the representative parties will fairly and adequately protect the interests of the Class. Labaton Sucharow and Hahn Loeser, Court-appointed Lead Counsel for Lead Plaintiff the Ohio State Funds, have zealously and ably represented Lead Plaintiff on behalf of the proposed Class, having expended nearly 30,000 hours in prosecution and investigation of the claims against the settling Defendants. (Dubbs Decl. Apr. 27, 2012, ¶ 175; Lead Pl.s' Mem. L. Further Supp. Mot. Final Approval, p. 8, n. 7.) There is no conflict or antagonism between the claims of the Ohio State Funds and the other members of the proposed Class.

Finding all criteria of Rule 23 satisfied, this Court finally certifies the Settlement Class for settlement purposes and appoints Lead Plaintiff as Settlement Class Representative and Lead Counsel as Settlement Class Counsel.

### B. *Fairness of the Settlement*

■ Under Rule 23(e), to grant final approval of a Settlement, the Court must determine whether the Proposed Settlement is fair, reasonable and adequate. In making this determination, the Court must review both the procedural and substantive fairness of a proposed settlement. To find a settlement procedurally fair, the Court must pay close attention to the negotiating process, to ensure that the settlement resulted from arm's-length negotiations, and that Plaintiff's Counsel possessed the experience and ability, and engaged in the discovery necessary for effective representation of the Class's interests. To find a settlement substantively fair, the Court reviews the nine *Grinnell* Factors.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir.1974).

■ *Procedural Fairness:* The Court finds that the Settlement resulted from "arm's length negotiations." Class Counsel possessed the requisite amount of experience and ability, and the parties engaged in the discovery necessary for effective representation of the Class's interests. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir.2001) (citing *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir.1982)).

By the time the Settling Parties reached the Settlement, Lead Plaintiff, through able and experienced Lead Counsel, had (i) opposed Motions to Dismiss by 23 Defendants, including AIG; (ii) completed class discovery, involving many depositions; (iii) moved for class certification; and (iv) completed all fact discovery, including the review and analysis of many millions of pages of documents. (Dubbs Decl. Apr. 27, 2012, ¶¶ 71–139.) Over the course of the case, the Parties engaged in numerous discussions, both formal and informal, culminating in a mediation session with the Honorable Layn R. Phillips (Ret.) in June of 2010. (*Id.*)

■ *Grinnell Factor 1:* The Court finds that the litigation is complex, and would likely be costly and lengthy in duration. Had the Parties not reached a Settlement, this case would have likely continued for many more years and would have involved continued discovery, summary judgment motions, and a lengthy and complex trial, all of which would involve considerable expense, and after which the Settlement Class might have obtained a result far less beneficial than the one provided by the Settlement. (Mem. L. Supp. Mot. Approval at 9.)

*Grinnell Factor 2:* The Court finds that the reaction of the Class to the Settlement has been positive. With more than 2 million Notice Packets mailed to potential members of the Settlement Class and nominees, there were only 61 requests for exclusion received, out of which 15 were timely and valid. (*See* Miller Aff., June 12, 2012, ¶¶ 10–12.) Additionally, there were only two objections, one of which was withdrawn prior to the Fairness Hearing, and the other overruled as without merit. (ECF No. 639, 663, 671, 682.)

*Grinnell Factor 3:* The Court finds that proceedings have progressed and sufficient discovery has been completed to understand Plaintiffs' claims and negotiate Settlement terms. As noted above, this litigation has taken years and has involved extensive discovery and briefing on Motions to Dismiss and class certification issues.

*Grinnell Factors 4 and 5:* The Court finds that the risks of establishing liability and damages are significant. One of the frauds alleged involved hundreds of separate insurance transactions. Proof of wrongdoing would have to be established for each allegedly improper transaction separately. Moreover, the case involves violations of complex accounting rules that might not be understood easily by a jury. (Mem. L. Supp. Approval at 14.)

*Grinnell Factor 6:* The Court finds that the risk of maintaining the class action through the trial neither weighs for nor against approving the Settlement in this case.

*Grinnell Factor 7:* The Court finds that Defendants' ability to withstand a judgment greater than the Settlement weighs in favor of approval. Over the course of this case, the wealth and assets of Defendants were diminished greatly, particularly with the extreme drop in the price of AIG stock and the company's need for a government bailout in 2008. (Mem. L. Supp. Approval at 19.)

*Grinnell Factors 8 and 9:* The Court finds that the Settlement is reasonable in light of: (a) Plaintiffs' best possible recovery, and (b) the attendant risks of litigation. The $115,000,000.00 represents a significant Settlement for the Class, especially given that "control person" only settlements are rare, and this Settlement is primarily with individuals (four of the six Starr Defendants are former AIG executives). (Mem. L. Supp. Approval at 21.) Indeed, this Settlement represents one of the largest paid by individual Defendants. (*Id.*) In light of the significant risks involved in the litigation, the recovery is an excellent result for the Settlement Class.

466

Having considered the procedural and substantive factors, the Court find the proposed Settlement to be fair, reasonable and adequate under Rule 23 and THE SETTLEMENT IS HEREBY APPROVED.

### C. Reasonableness of the Plan of Allocation

■ "When formulated by competent and experienced class counsel," a plan of allocation of net settlement proceeds "need have only a reasonable, rational basis." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y.2004). Here, the Plan of Allocation, which is described in the Notice, apportions the recovery among Settlement Class Members. Those who purchased common stock and options will recover a larger portion of the Settlement than those who purchased the bonds, in recognition of the particular risks involved in establishing loss causation and market efficiency for the bonds. The Plan also apportions recovery to take into account the strength of potential claims relative to the time of the purchase or sale of AIG Securities, and to account for distributions from the Fair Fund created in *SEC v. American International Group, Inc.*, No. 06 Civ. 1000 (S.D.N.Y. June 15, 2007) (LAP).

As discussed above, the Plan of Allocation as set forth in the Agreement provides that any unclaimed or residual funds will be subject to a *cy pres* distribution to a 501(c)(3) not-for-profit. The Plan of Allocation, in all respects, represents a fair and equitable method for allocating the Settlement Fund among Authorized Claimants, and it is HEREBY APPROVED.

### D. Attorneys' Fees and Expenses

■ To ensure the appropriateness of attorneys' fees and costs, the Court reviews the award in accordance with the six *Goldberger* criteria. *Goldberger v. Int. Resources*, 209 F.3d 43, 50 (2d Cir.2000).

*Goldberger Factors 1 and 2:* As discussed in the "Procedural Fairness" section above, the Court finds that Counsel have expended considerable time and labor on behalf of Plaintiffs and the litigation is complex and of large magnitude.

*Goldberger Factor 3:* As discussed in *Grinnell* factors 4, 5, and 6 above, the Court finds that the risks of litigation for Plaintiffs are substantial.

*Goldberger Factor 4:* The Court finds that the representation of Class Counsel is of high quality. Lead Counsel have extensive experience in complex litigation and are nationally known leaders in the field of securities class actions. (Dubbs Decl. Apr. 27, 2012, ¶¶ 175–78.)

*Goldberger Factor 5:* The Court finds that in relation to the Parties' Settlement, the requested attorneys' fees of 13.25% are reasonable. The Office of the Ohio Attorney General notes that despite the "extraordinary circumstances confronted in this case," Lead Counsel demonstrated a "creative and aggressive resolution of the issues," achieved "excellent results," and therefore "merit this award." (Smith Supp. Decl., Apr. 23, 2012.) In addition, the requested fee award in this case is well in line with fee awards in cases with similar settlement amounts. *See, e.g., In re Initial Pub. Offering Sec. Litig.*, 671 F.Supp.2d 467, 516 (S.D.N.Y.2009) (awarding 33.30% on a Settlement Fund of $586 million); *Carlson v. Xerox Corp.*, 596 F.Supp.2d 400 (D.Conn.2009) (awarding 16% on a Settlement Fund of $750 million). Finally, the award of 13.25% is consistent with the Agreement between Lead Counsel and the Ohio Attorney General. (Dubbs Decl. Apr. 27, 2012, ¶ 163.) This Court, therefore, agrees with Counsel and the Ohio Attorney General, and concludes that the 13.25% fee award is "eminently reasonable under the circumstances of this case and precedent within this Circuit." (Reply Mem. Law. in Further Supp. Of Mot. For Approval at 6–7.)

*Goldberger Factor 6:* The Court finds that public policy supports granting attorneys' fees "that are sufficient to encourage plaintiffs' counsel to bring securities class actions that supplement the efforts of the SEC." *In re Bristol–Myers Squibb Sec. Litig.*, 361 F.Supp.2d 229, 236 (S.D.N.Y.2005). This Court finds that an award of 13.25% of the Settlement Fund promotes the valuable public policy interests at stake.

*Expenses:* "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients." *In re Independent Energy Holdings PLC Sec. Litig.,* 302 F.Supp.2d 180, 183 (S.D.N.Y.2003). This Court finds that expenses in the amount of $991,596.83 were reasonable and necessary to the prosecution of this Action. The categories of expenses for which Counsel seek reimbursement are the types of expenses routinely charged to hourly paying clients including, *inter alia,* fees for experts and consultants, filing fees, and discovery expenses. (Dubbs Decl. Apr. 27, 2012, ¶¶ 180–86; Lead Pl.s' Mem. Law. in Further Supp. of Final Approval at 10.) The costs are detailed and well-documented, and are not duplicated in the attorney billing rates. *(Id.)*

Having conducted the *Goldberger* analysis, the Court finds attorneys' fees of 13.25% of the Settlement Fund to be reasonable and those attorneys' fees are HEREBY AP-PROVED. Likewise, the Court finds attorneys' expenses of $991,596.83 reasonable and those expenses are HEREBY APPROVED.

■ *Class Representative Compensation:* "Courts in this Circuit routinely award ... costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *Hicks v. Stanley,* No. 01 Civ. 10071, 2005 WL 2757792, at *10 (S.D.N.Y. Oct. 24, 2005); *see also In re Marsh & McLennan Cos., Inc. Sec. Litig.,* NO. 04 Civ. 8144, 2009 WL 5178546, at * 21 (S.D.N.Y. Dec. 23, 2009). Here, the request of OPERS and STRS Ohio for reimbursement of $7,805.00 in lost wages related to their active participation in this action is reasonable, and those expenses are HEREBY APPROVED.

SO ORDERED.